UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                         CIVIL ACTION

VERSUS                                NUMBER 14-182-SDD-SCR

EISNERAMPER, LLP, ET AL

## NOTICE

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 18, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL                          CIVIL ACTION

VERSUS                                 NUMBER 14-182-SDD-SCR

EISNERAMPER, LLP, ET AL


## <u>MAGISTRATE JUDGE'S REPORT</u>

Before the court is a Motion to Remand filed by plaintiffs, the Firefighters' Retirement System ("FRS"), Municipal Employers' Retirement System of Louisiana ("MERS"), and New Orleans Firefighters' Pension and Relief Fund ("NOFPF"), (hereafter, collectively, "plaintiffs"). Record document number 10. The motion is opposed.[1]

Plaintiffs filed a Petition for Damages in state court against defendants EisnerAmper LLP (Eisner US) and EisnerAmper (Cayman) Ltd. (Eisner Cayman), (collectively, hereafter, "EisnerAmper"). In their Petition the plaintiffs alleged claims against EisnerAmper based on Louisiana state laws: (1) the Louisiana Securities Act; (2) holder claims; (3) fraud; (4) negligence; (5) third party beneficiary; (6) negligent misrepresentation; and, (7) the Louisiana Unfair Trade Practices Act. Plaintiffs did not allege any claims under federal law against EisnerAmper.

---

[1] Record document numbers 11. Plaintiffs also relied on the memoranda they filed in CV 13-373-SDD-SCR. Record document numbers 10-3 and 10-4.

EisnerAmper removed the petition to this court based on the following grounds: (1) jurisdiction under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"; and (2) diversity jurisdiction under 28 U.S.C. § 1332(a).[2]

Plaintiffs moved to remand based on a lack of subject matter jurisdiction, and alternatively, based on mandatory and permissive abstention under 28 U.S.C. § 1334(c)(1) and (2) for actions related to bankruptcy cases.

For the reasons explained below, the plaintiffs' Motion to Remand should be denied.

## Background

This case arises out of the same facts and series of events giving rise to the litigation filed by the plaintiffs in *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.*, CV 13-373-SDD-SCR.[3] The background facts set forth in CV 13-

---

[2] The removal statutes that correspond to these grants of federal jurisdiction are 28 U.S.C. §§ 1441(a) and 1452(a).

[3] The Magistrate Judge's Report issued in CV 13-373-SDD-SCR recommended finding that jurisdiction existed under § 1334(b), but that the court should exercise permissive abstention under § 1334(c)(1). CV 13-373-SDD-SCR, record document number 204. The question of whether the court had diversity jurisdiction was not addressed. Rejecting the objections of several defendants, the district judge accepted and adopted the report and recommendation and ordered remand. An appeal was filed. USCA Case Number 14-
(continued...)

373-SDD-SCR will not be repeated and are incorporated by reference in this report. The following summary includes only information pertinent to the plaintiff's allegations against EisnerAmper.

Plaintiffs alleged that EisnerAmper executed an engagement letter with FIA Leveraged Fund (hereafter, "Leveraged") to perform the audit of Leveraged for the year ending December 31, 2009. However, EisnerAmper never completed the audit because it became aware that the plaintiffs' redemption right had been triggered, which would have caused a run on the other Fletcher funds. Plaintiffs alleged that EisnerAmper, rather than informing the plaintiffs and issuing its audit or withdrawing from the audit, did nothing, which was a breach its duty of independence required by generally accepted auditing standards. According to the plaintiff's allegations, EisnerAmper was more concerned about Fletcher[4] and not causing an adverse impact on the other related Fletcher funds that it also audited.

---

[3](...continued)
30857. The Fifth Circuit issued its opinion August 6, 2015, which it substituted for its initial opinion that was withdrawn. *Firefighters' Retirement System v. Citco Group Ltd.*, _____ F.3d _____, 2015 WL 4666010 (5th Cir. August 6, 2015). Rehearing was denied.

The Fifth Circuit reversed the district court's ruling and remanded the case for further proceedings, holding that the plaintiff's removed state court action was related to Chapter 15 bankruptcy cases. Therefore, under 28 U.S.C. § 1334(c)(1) the district court was prohibited by statute from permissively abstaining and equitably remanding the action to state court.

[4] This is a reference to defendant Alphonse "Buddy" Fletcher, Jr., who is a party in CV 13-373-SDD-SCR.

In July 2011 the plaintiffs and EisnerAmper went to a scheduled meeting in New York to discuss the issuance of the 2009 Leveraged audit. Plaintiffs alleged that at the meeting EisnerAmper disclosed that the plaintiffs' redemption right had been triggered, but failed to disclose other material defaults and events. Plaintiffs were told that the 2009 Leveraged audit would not be issued unless they executed a waiver of the redemption right. Plaintiffs executed the waiver, but EisnerAmper never issued the audit. Plaintiffs claimed that if EisnerAmper had timely disclosed the defaults and misuse of the offering proceeds, and timely issued or withdrawn from the 2009 Leveraged audit, they could have redeemed their shares, prevented Leveraged from making other distributions to other shareholders in Leveraged and the Fletcher Income Arbitrage Fund, Ltd., and thereby mitigated or eliminated their losses. Instead EisnerAmper did nothing and allowed the Fletcher scheme to continue even though it knew or should have known there was substantial doubt about the ability of Leveraged to continue as a viable entity. Plaintiffs alleged that as a result of EisnerAmper's acts and omissions and violations of generally accepted accounting and auditing standards, it is solidarily liable with the other defendants in CV 13-373-SDD-SCR for the loss of the plaintiff's original investment (in the Series N shares), other economic damages and attorney's fees.

<u>**Applicable Law**</u>

**General Principles**

The removing party bears the burden of establishing federal jurisdiction over a state court suit. *Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995). As with removal under the general provision of § 1441(a), the existence of subject matter jurisdiction is determined as of the time of removal. *In re Bissonnet Investments* LLC, 320 F.3d 520, 525 (5th Cir. 2003); In *re Legal Xtranet, Inc.*, 453 B.R. 699, 703-04 (W.D. Tex. 2011). Thus, if "related to" jurisdiction exists at the time of removal, subsequent events do not divest the district court of subject matter jurisdiction. *In re Enron Corp. Securities*, 535 F.3d 325, 336 (5th Cir. 2008). Generally, the "well-pleaded complaint" rule applies only to statutory "arising under" cases. *American National Red Cross v. S.G.,* 505 U.S. 247, 258, 112 S.Ct. 2465 (1992). Therefore, the "well-pleaded complaint" rule is used to determine whether there is "arising under" jurisdiction in bankruptcy, but it is not applicable in "related to" bankruptcy removal cases. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 511 F.Supp.2d 742, 764 (S.D. Tex. 2005); *In re Brooks Mays Music Co.,* 363 B.R. 801, 814-15 (N.D. Tex. 2007). Given the test for related to jurisdiction – whether the outcome of the action could conceivably have an effect or impact on the estate being administered - it is clear that the

related to test is one that focuses on the potential outcome or end result of the litigation rather than on the face of the complaint. *Brooks Mays Music Co.*, 363 B.R. at 815.

**Subject Matter Jurisdiction - Diversity under 28 U.S.C. § 1332**

Since the enactment of the diversity statute, it has been interpreted to require complete diversity of citizenship. *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 1017 (1990). In *Carden*, the Supreme Court held that a federal court must look to the citizenship of each member of a partnership - both its limited and general partners - to determine whether there is complete diversity. *Id.,* at 1021.

Under the diversity statute, § 1332(a), state citizenship is synonymous with domicile. For this reason, a United States citizen who is domiciled abroad is not a citizen of any state of the United States, and cannot sue or be sued in federal court on the basis of diversity jurisdiction. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

A state is not a citizen of any state for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1796-97 (1973). This rule also applies if a suit is brought against an agency that is the alter ego or arm of the state - federal jurisdiction is lacking. *PYCA Industries, Inc. v. Harrison County Waste Water Management,* 81 F.3d 1412, 1416 (5th

Cir. 1996), citing, *Tradigrain, Inc. v. Mississippi State Port Authority,* 701 F.2d 1131 (5th Cir. 1983). However, if the agency is an independent one, separate and distinct from the state, the district court can properly assert jurisdiction over the case. *Id.*

If the agency's status is unclear the court looks to all available sources for guidance. The fact that the enabling legislation describes it as a political subdivision does not make its status clear. A state statute characterizing the agency as an arm of the state is only one factor to consider in the balancing test. *PYCA Industries, Inc.*, 81 F.3d at 1416, citing, *McDonald v. Board of Mississippi Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir.1987).[5] As was explained in *Tradigrain*, there are many factors to consider in determining whether an agency is the alter ego of the state, including: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of entity funding; (3) the degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) the authority to sue and be sued in its own name; and, (6) the right to hold and use property. Typically, some factors will suggest that the agency is a citizen, while others

---

[5] The *McDonald* factors are technically a test for Eleventh Amendment immunity. However, the analysis of an agency's status is virtually identical whether the case involves determination of immunity under the Eleventh Amendment or a determination of citizenship for diversity jurisdiction. *Tradigrain*, 701 F.2d at 1132.

will suggest that it is the alter ego of the state. *Id.*

**Subject Matter Jurisdiction - Related to Bankruptcy under 28 U.S.C. § 1334**

Under 28 U.S.C. § 1334(a) the district court has original and exclusive jurisdiction over all cases under Title 11. Under § 1334(b) the district courts have original but not exclusive jurisdiction over all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. Thus, § 1334 provides jurisdiction in four types of matters: (1) cases under Title 11; (2) civil proceedings arising under Title 11; (3) civil proceedings arising in cases under Title 11; and (4) civil proceedings related to cases under Title 11. *In re Matter of Wood*, 825 F.2d 90, 92 (5th Cir. 1987). The phrase "under Title 11" refers to the bankruptcy proceeding itself. The phrase "arising under Title 11, or arising in or related to cases under Title 11" identifies, collectively, a broad range of matters subject to bankruptcy jurisdiction. The phrase "arising under Title 11" defines proceedings that involve a cause of action created or determined by a statutory provision of Title 11. The terms "arising in...cases under Title 11" refers to administrative matters that arise only in bankruptcy cases. *Id.*

"Related to" is a term of art. *In re Canion,* 196 F.3d 579, 585 (5th Cir. 1999). To determine whether a matter falls within general "related to" jurisdiction, it is necessary only to

determine whether a matter is at least related to the bankruptcy. *In re Bass,* 171 F.3d 1016, 1022-23 (5th Cir. 1999).[6]  Matters "related to cases under Title 11," refers to a much broader category of proceedings.  For purposes of bankruptcy jurisdiction, the phrase has a causal component.  For bankruptcy jurisdiction to exist based on a case being related to a case under Title 11, the proceeding must be capable of causing an effect on a bankruptcy estate.  *Id.*  Thus, "a proceeding is related to a bankruptcy if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."   State another way, an action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the debtor's estate.  *Id.; In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995); *In re TMT Procurement Corp.,* 764 F.3d 512, 526 (5th Cir. 2014).  For jurisdiction to exist, the anticipated outcome of the action must both alter the rights, obligations, and choices of action of the debtor, and have an effect on the administration of the estate.  *Id.*  The law is well established that when testing "related to" jurisdiction, an effect

---

[6] For purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings arising under, arising in a case under, or related to a case under title 11.  It is necessary only to determine whether a matter is at least related to the bankruptcy. *Matter of Wood*, 825 F.2d at 93.

is not required to be certain.  Certainty, or even likelihood, of such an effect is not a requirement.  Rather, jurisdiction will exist based on a finding of any conceivable effect.  *In re Canion,* 196 F.3d at 587.

The exercise of jurisdiction over cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but which § 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum.  *In re Zale Corporation*, 62 F.3d 746, 751 (5th Cir. 1995). Another purpose is to force into the bankruptcy court those suits to which the debtor need not be a party but which may affect the amount of property in the debtor's estate.  *Id.* at 752.

Nevertheless, "related to" jurisdiction is not limitless. "[A]s a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." *Id.; Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994).  Those cases in which the exercise of "related to" jurisdiction over third-party actions is upheld do so because the subject of the third-party dispute was property of the estate or because the dispute over the

asset would have an effect on the estate. *In re Zale,* 62 F.3d at 753.[7] Shared facts between the third-party action and a debtor-creditor conflict do not, in and of themselves, suffice to make the third-party action related to the bankruptcy. Judicial economy alone also does not justify the exercise of "related to" jurisdiction over an otherwise unrelated suit. It is the relationship of the dispute to the estate, and not the party to the estate, that establishes jurisdiction. *In re Zale,* 62 F.3d at 753-755.

**Mandatory and Permissive Abstention**

If the court has jurisdiction under § 1334(b) the next issue that must be addressed is abstention - permissive abstention under 28 U.S.C. § 1334(c)(1) and mandatory abstention under § 1334(c)(2).

Mandatory abstention is based on § 1334(c)(2), which provides as follows:

Upon timely motion of a party in a proceeding based upon

---

[7] *See*, *In re Canion*, *supra*, citing, *Owens Illinois, Inc. v. Rapid American Corp ( In re Celotex Corp.)*, 124 F.3d 619, 626 (4th Cir.1997) (finding "related to" jurisdiction when a creditor's claim against a non-debtor would reduce its claim in bankruptcy); *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306-07 (9th Cir. 1989) (upholding "related to" jurisdiction over third-party action as specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy estate); *National Union Fire Ins. Co. v. Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988) (holding that a coverage dispute between the debtor's insurance company and a creditor was "related to" the bankruptcy as a finding of coverage would reduce the claims against the estate); *Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Trust)*, 87 B.R. 447 (E.D.Mich. 1988).

a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Fifth Circuit has interpreted this provision to mandate federal court abstention where: (1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. *Schuster v. Mims (In re Rupp & Bowman)*, 109 F.3d 237, 239 (5th Cir.1997); *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007); *In re Southmark Corp.,* 163 F.3d 925, 929 n.2 (5th Cir.), *cert denied*, 527 U.S. 1004, 119 S.Ct. 2339 (1999).

Permissive abstention is based on § 1334(c)(1), which provides as follows:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Thus, the court in its discretion may abstain from deciding either core or noncore proceedings under § 1334(c)(1), if the interests of justice, comity or respect for state law so require. *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996). This permissive abstention provision is implemented in conjunction with

the bankruptcy jurisdiction removal statute, which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  28 U.S.C. § 1452(b).

The Fifth Circuit listed eight considerations for equitable remand in *Brown v. Navarro,* 743 F.2d 1069, 1076 fn. 21 (5th Cir. 1984).  They are: (1) forum non conveniens; (2) if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) whether a state court is better able to respond to questions involving state law; (4) the expertise of a particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and, (8) a lessened possibility of an inconsistent result.  *Id.; In re Johnson,* 506 B.R. 233, 241 (M.D.La. 2014).

When the issue is equitable remand and the appropriateness of permissive abstention under § 1334(c)(1), some district and bankruptcy courts cite these eight factors, others cite a list of 14 factors which include the requirements for mandatory abstention, and some cite both sets of factors.  The 14 factors are: (1) the effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of

related proceeding commenced in state court or other non-bankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and, (14) the possibility of prejudice to other parties in the action. *Regal Row Fina, Inc. v. Washington Mutual Bank*, 2004 WL 2826817, 8-9 (N.D.Tex., Dec. 9, 2004, N.D.Tex.); *In re Ballard*, 2012 WL 4162382 (Bkrtcy. S.D. Tex., Sept. 19, 2012); *Sonnier v. Hesco Bastion USA, LLC*, 2013 WL 5350853 (M.D.La., Sept. 23, 2013); *In re J. Moss Investments,* Inc., 2012 WL 2150346 (Bkrtcy. S.D. Tex., 2012); In *re Trimjoist Corp.*, 2013 WL 3934368 (Bkrtcy. N.D. Miss., July 30, 2013).

The Fifth Circuit held in *Firefighters' Retirement System v. Citco Group Ltd.,* that a district court may not permissively abstain from exercising jurisdiction in proceedings related to Chapter 15 bankruptcy cases. Furthermore, §§ 1334(c)(1) and 1452(b) must be read *in pari materia* and the result is that this

14

prohibition against abstention also applies to bar equitable remand.

**Costs and Expenses under 28 U.S.C. § 1447**

Plaintiffs also requested an award of cost and actual expenses including attorney's fees under 28 U.S.C. § 1447(c).

There is no automatic entitlement to an award of attorney fees under § 1447(c). The clear language of the statute, which provides that the "order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of the removal," makes such an award discretionary. The Supreme Court set forth the standard for awarding fees under § 1447(c) in *Martin v. Franklin Capital Corporation*, 546 U.S. 132, 126 S.Ct. 704 (2005):

> [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. *See*, *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Id.*, at 711.

The court must consider the propriety of the removing party's actions at the time of removal, based on an objective view of the legal and factual elements in each particular case, irrespective of the fact that it was ultimately determined that removal was improper. *Id.*; *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993); *Avitts v. Amoco Production Co.*, 111 F.3d 30, 32 (5th Cir.), *cert. denied*, 522 U.S. 977, 118 S.Ct. 435 (1997).

## Parties' Arguments and Analysis

### Diversity Jurisdiction under § 1332(a)

The issues that must be addressed with regard to whether the court has diversity jurisdiction are the citizenship of EisnerAmper's partners, and whether FRS and MERS are arms of the state. The record demonstrates that the court has subject matter jurisdiction in this case based on diversity.

### Citizenship of EisnerAmper Partners

In the Notice of Removal, EisnerAmper alleged that EisnerAmper Cayman is incorporated under the law of the Cayman Islands and has its principal place of business in the Cayman Islands.[8] Plaintiffs did not dispute this allegation. With regard to EisnerAmper LLP the Notice of Removal stated that it is a New York Limited liability partnership with its principal place of business in New York, that none of its partners reside in or are citizens of

---

[8] Record document number 1, Notice of Removal, ¶ 9.

Louisiana,[9] and that none of its partners are United States citizens domiciled abroad. Plaintiffs argued that EisnerAmper has not met its burden of establishing diversity because the Notice of Removal simply includes an unsupported allegation that none of EisnerAmper LLP partners are domiciled abroad.[10] Plaintiffs submitted a page from EisnerAmper's website, asserting that based on this information the companies have a substantial foreign practice,[11] and speculated that it is highly unlikely that some of their partners are not domiciled abroad.

EisnerAmper maintained that EisnerAmper LLP does not have any partners who are United States citizens living abroad. EisnerAmper provided the affidavit of the managing director of finance of EisnerAmper LLP, Russell Ascher, who stated that the partnership has no partners who are U.S. citizens domiciled outside of the United States.[12] Plaintiffs did not provide an affidavit, declaration, or other reliable information to contest Ascher's affidavit. Therefore, the present record establishes that EisnerAmper LLP does not have any partners living abroad that would preclude the existence of diversity jurisdiction in this case.

---

[9] Plaintiffs did not contest the allegation that none of the partners have residence/citizenship in Louisiana.

[10] Record document number 1, Notice of Removal, ¶ 10.

[11] Record document number 10-6, Exhibit 4.

[12] Record document number 11-3, Exhibit B, Affidavit of Russell Ascher.

**Louisiana Funds Status as Arms of the State**

Plaintiffs did not argue that NOFPF, the New Orleans pension fund, is an arm of the state. However, the plaintiffs maintained that the *Tradigrain* analysis should result in finding that FRS and MERS are arms of the state, and therefore are not citizens of any state for purposes of diversity jurisdiction. EisnerAmper argued the contrary position.

The analysis of the *Tradigrain* factors that follows shows that EisnerAmper's arguments are persuasive and result in the conclusion that FRS and MERS are not arms of the state. The first factor focuses on this question: Do the state's statutes and case law characterize or treat the entity as an arm of the state? Plaintiffs argued that the answer is yes, relying on a Louisiana Attorney General Opinion, and the Louisiana Supreme Court decision in *Louisiana Municipal Association v. State of Louisiana*, 893 So.2d 809 (La. 2005). However, the arguments and authority relied on by the plaintiff are not persuasive. As pointed out by EisnerAmper, the Attorney General Opinion does not specifically address the legal status of statewide retirement systems such as MERS and FRS[13] in the context of determining whether there is diversity jurisdiction. Furthermore, the Attorney General's conclusion was based on a truncated analysis that considered only that the

---

[13] Both MERS and FRS are included in the definition of statewide retirement systems. LA-R.S. 11:4(B)(1)(d) and (e).

legislature set up and implemented the statewide retirement systems and the powers and duties of the board of trustees.

The *Louisiana Municipal Association* case addressed 1991 legislative changes made to statewide retirement systems and whether those changes violated the Louisiana constitution. The decision did not result in any holding or statement that statewide retirement systems in general, or MERS and FRS specifically, are agencies or arms of the state. In fact, a closer review of the opinion and decision supports the conclusion that state law does not treat MERS and FRS as agencies or arms of the state.[14] They both point out that the statutes specifically define certain public employee retirement systems, such as the Louisiana State Employees Retirement System ("LASERS") and Louisiana School Employees' Retirement System ("LSERS"), as state agencies.[15] Whereas, neither MERS nor FRS, which are statewide systems, are not defined in the statutes as state agencies. The current law simply states that FRS and MERS have the powers and privileges of a corporation.[16] The legislature's choice to define some retirement systems as state agencies and not others implies that the ones that were not so defined, were not intended by the legislature to be considered

---

[14] EisnerAmper noted that the plaintiff did not cite any state statute, federal or state court decision that holds or defines MERS or FRS as a state agency or arm of the state.

[15] LSA-R.S. 11:402; LSA-R.S. 11:1001.

[16] LSA-R.S. 11:1731; LSA-R.S. 11:2251.

state agencies or arms of the state.

Two other factors plainly indicate that MERS and FRS are
independent and separate from the state:  they have the right to
hold and use property, and to sue and be sued in their corporate
names.  Plaintiffs did not dispute this fact but argued that these
rights are somewhat limited by state law.[17]  The statutes cited by
the plaintiff do not support the conclusion that they are
limitations on these rights.  However, even it they were the
plaintiffs failed to explain how the alleged limitations tend to
show that MERS and FRS are state agencies or arms of the state.[18]

The next question is:  Are these two plaintiff retirement
systems concerned primarily with local or statewide problems and
concerns?  Plaintiffs argued that because MERS and FRS provide and
disburse benefits for municipal workers and firefighters located
all over the state, they are concerned with statewide as opposed to
local problems.  EisnerAmper argued that the opposite conclusion is
warranted because  the systems were set up for the benefit of local
entities and their employees, who elect to be a part of the system
and contribute a majority of the funds.

The fact that the state has acted through its constitution and
statutes to set up MERS and FRS indicates that a sound retirement

---

[17] Record document number 60-2, p. 36.

[18] EisnerAmper's arguments with regard to these two factors are
persuasive.  Record document number 11, EisnerAmper's Opposition to
Plaintiffs' Motion to Remand, pp. 10-11.

benefit systems for local government employees is a concern of the state. However, MERS and FRS clearly operate to provide benefits for local municipalities and fire districts. Since the origin and operation of MERS and FRS deal with concerns that are both state and local, this factor is essentially neutral.

Do MERS and FRS have management and financial autonomy from the state? This is a key factor in the analysis. Plaintiffs argued that the provisions of the state constitution and Title 11, entitled "Consolidated Public Retirement Systems," show that FRS and MERS lack autonomy from the state.[19] For example, the plaintiff pointed out that: (1) La.Const. art. X, § 29(E) requires the actuarial soundness of the statewide systems be maintained and that the legislature establish the method of actuarial valuation for each system; (2) in Title 11 the legislature established the method of actuarial valuation and for amortization of unfunded accrued liabilities, the employee contribution rates, and a multi-level formula to determine the rates of employer contributions; (3) to monitor the statewide retirement systems and insure their actuarial soundness and payment of benefits, the legislature established the Public Retirement Systems' Actuarial Committee and the Funding Review Panel; (4) state laws require the investment managers and advisors of FRS and MERS to provide annual audits and investment

_____

[19] Record document number 10-3, Memorandum in Support of Motion to Remand (same as Record document number 60-2 filed in CV 13-373-SDD-SCR), pp. 27-35.

performance data; (5) the systems are managed by a board of trustees and the boards include two members of the legislature, the state treasurer and commissioner of administration; and (6) FRS and MERS are subject to state open meetings and public record laws, and their trustees and board members are subject to state ethics law. Plaintiffs also emphasized that MERS and FRS obtain part of their funding from a percentage of ad valorem taxes and a fund created from an assessment on insurers who do business in the state.[20]

Review of the arguments and statutes relied on by the plaintiffs shows that the legislature set up the structure of MERS and FRS to monitor and oversee them for the purpose of fulfilling the constitutional requirement that the funds not be impaired or diminished and remain sound to insure that accrued benefits are paid.[21] However, in light of other undisputed facts, this does not demonstrate FRS and MERS lack management and financial autonomy from the state.

In 1991 the legislature repealed the law that transferred MERS and FRS into the state department of the treasury.[22] The boards have a few state officials on them, but the vast majority of board

---

[20] *Louisiana Municipal Association,* 893 So.2d at 816-17, 821, 827.

[21] *Id.,* at 819-24.

[22] LSA-R.S. 36:769(D)(8) and (9).

members are local and not state officials.[23]  Plaintiffs did not

dispute that the boards manage and make the decisions on daily

operations and the retirement fund investments.[24]   Most important,

however, is the fiscal autonomy of MERS and FRS that was

established by the changes in the law enacted in 1991.   These

changes are discussed in great detail in the *Louisiana Municipal

Association* decision.

As explained in *Louisiana Municipal Association* and

acknowledged by the plaintiffs, in 1991 the law was amended so that

the state no longer guaranteed the payment of benefits to members

of FRS and MERS - the state is not responsible for their debts,

financial obligations or any annual shortfall in the return on

investments needed to pay benefits.  Instead, the state's current

obligation is to maintain the actuarial soundness of the funds by

using a variety of funding mechanisms such as direct contributions

from employers and employees, a percentage of ad valorem taxes, or

an assessment on insurers, and providing a formula for calculating

---

[23] LSA-R.S. 11:1821(B); LSA-R.S. 11:2260(A).

[24] The legislature gave the boards the authority to employ and
determine the compensation of actuaries, legal counsel  and other
persons that are needed for them to administer the funds.   The
legislation also gives them the power to purchase, hold, sell,
assign and dispose of the property in the funds of the retirement
systems.  See, LSA-R.S. 11:2260 and 11:2261; LSA-R.S. 11:1823 and
1841.

the employers' contribution.[25]  The law is now structured so that actuarial soundness is maintained by placing the risk of any shortfall in the investments on the participating employers, and not on the state and its treasury.[26]

This is in contrast to the four state retirement systems. With the state retirement systems the legislature itself sets the employer's contribution rate, because the state must directly pay from its general funds any annual shortage of money needed to pay benefits.[27]  The source and method of funding, and the fact that the state does not pay or guarantee the payment of the benefits in FRS and MERS, support the conclusion that they have financial independence from the state and its treasury such that they must be considered separate and distinct from the state, rather than an agency, alter ego or arm of the state.

In support of the position that FRS and MERS are entities independent from the state, EisnerAmper also relied on complaints

---

[25] The vast majority of the funds in FRS and MERS come from local sources.  Record document number 11, p. 15; record document number 11-1, declaration of Charlotte C. Meade; record document number 11-9, Exhibit H, deposition of Steven B. Stockstill.

[26] *Louisiana Municipal Association*, 893 So.2d at 821-29, 845-53.

[27] The fact that any shortfalls in the actuarial computation are the direct responsibility of the state itself is a defining feature of the four state guaranteed public retirement systems. *Id.*, at 823, 826, 849, 850-51.

filed in this court and in the Northern District of Illinois.[28] Although, EisnerAmper has not established that the doctrine of judicial estoppel should be applied,[29] review of these complaints shows that the plaintiffs jurisdictional allegations are inconsistent with the position they have taken in this case. Review of these complaints shows that in the Illinois case, FRS alleged that jurisdiction was based on diversity and the Class Action Fairness Act, stating that "FRS is of diverse citizenship from the Defendants."[30] In the 2009 case filed in this court, MERS alleged that it is "a public retirement system organized under the laws of the State of Louisiana, with its principal place of business in Baton Rouge, Louisiana." In addition to jurisdiction under federal securities law, the jurisdictional allegations by MERS also included a statement that the court had jurisdiction under the diversity statute.[31] In response, the plaintiffs did not address or explain these inconsistent jurisdictional allegations they previously made in actions filed in federal court.

---

[28] Record document number 11, pp. 6-7; record document number 11-7, Complaint, CV 09-1008-RET-SCR; record document number 11-8, Class Action Complaint, CV 09-7203.

[29] The doctrine may be applied only where the position of the party to be estopped is clearly inconsistent with its previous one, and that party must have convinced the court to accept that previous position. *In re Coastal Plains, Inc.,* 179 F.3d 197, 205-06 (5th Cir. 1999).

[30] Record document number 11-8, Class Action Complaint, ¶ 13.

[31] Record document number 11-7, Complaint, ¶¶ 1 and 34.

In summary, virtually all of the T*radigrain* factors, particularly the ones related to management and finance, support a finding that FRS and MERS are not an alter ego or arm of the state. Plaintiffs FRS and MERS have previously filed complaints in federal court alleging diversity as a basis for jurisdiction. Therefore, the record establishes that FRS and MERS are separate and independent entities sufficiently distinct from the state, such that they should not be considered an arm of the state for purposes of diversity jurisdiction. Their presence does not prevent the exercise of subject matter jurisdiction under § 1332(a).

**Subject Matter Jurisdiction under § 1334(b)**

Plaintiffs maintained that the court does not have subject matter jurisdiction under § 1334(b) because EisnerAmper cannot demonstrate that this suit is sufficiently related to the bankruptcy cases pending in the Southern District of New York.[32] Plaintiffs argued their position is correct because, based on the well-pleaded complaint rule, it is apparent that they have not sued any of the bankruptcy debtors.[33] Plaintiffs argued further that

_____

[32] As explained in the Magistrate Judge's Report issued in CV 13-373-SDD-SCR, these cases are: (1) the Chapter 11 petition filed by Fletcher International Limited, Case Number 12-12796; (2) the Chapter 15 bankruptcy petition filed by the liquidator of Leveraged, Case Number 14-10093; and (3) the Chapter 15 bankruptcy petition filed by the liquidator of Arbitrage, Case Number 14-10094.

[33] Insofar as the plaintiffs relied on the well-pleaded
(continued...)

recovery against EisnerAmper in this suit will not diminish the
bankruptcy estate, and most importantly that the Confirmation Order
in the Fletcher International bankruptcy proceeding[34] gives them the
right to pursue their claims against EisnerAmper in state court.[35]

EisnerAmper asserted that in addition to diversity
jurisdiction, there is jurisdiction under § 1334(b) because the
circumstances of this case satisfy the broad standard of "any
conceivable effect" on the estate being administered in bankruptcy.
Eisneramper argued that the plaintiffs' state court petition seeks

---

[33](...continued)
complaint rule, the argument does not demonstrate this court lacks
jurisdiction under § 1334(b).  This rule does not govern in
deciding whether there is related to bankruptcy jurisdiction.  *In
re Brooks Mays Music Co., supra*.

[34] Record document number 10-5, Exhibit 3, pp. 1-54 (Findings
of Fact, Conclusions of Law and Order Confirming the Trustee's
Second Amended Plan of Liquidation Pursuant to Chapter 11 of the
Bankruptcy Code)(hereafter, "Confirmation Order"); Exhibit A, pp.
54-101 (Trustee's Second Amended Plan of Liquidation) (hereafter,
"Plan").  The Confirmation Order was signed and filed by the
bankruptcy judge on March 28, 2014.

[35] On the question of related to bankruptcy jurisdiction the
plaintiffs also relied on the arguments made in their briefs filed
in CV 13-373-SDD-SCR.  Plaintiffs attached the memoranda as
Exhibits 1 and 2.  Record document numbers 10-3 and 10-4.  However,
review of the memoranda shows that other than general arguments
about related to jurisdiction, the arguments do not support the
plaintiff's position in this case.  In CV 13-373-SDD-SCR the
plaintiffs sued a total of 23 defendants who were connected to
their investment in the Series N shares, and key defendants in the
case had filed proofs of claim in the bankruptcy proceeding and
were also connected to the debtor by virtue of alter ego
allegations in the petition as well as in the bankruptcy filings.
Consequently, the plaintiffs' arguments CV 13-373-SDD-SCR are in
large part not relevant or helpful in deciding the § 1334(b)
jurisdictional issue in this case.

recovery for the same losses they are attempting to recovery in the bankruptcy - the loss of their $100 million investment purchase of Series N Shares in Leveraged.[36] Given this fact, if the plaintiffs recover all or part of their losses in this action, it will necessarily impact the administration of and distributions available in the bankruptcy case.

With regard to the March 28, 2014 confirmation of the Plan in the Fletcher International bankruptcy case, EisnerAmper asserted that as long as there is related to jurisdiction at the time of removal the court is not divested of subject matter jurisdiction under § 1334(b) when the plan is confirmed. In addition, because plaintiffs seek the same loss in both forums and are not entitled to double recovery, any losses compensated by EisnerAmper in this case would make more available for distribution to other creditors in the administration of the Plan.

These arguments are persuasive. Essentially for the reasons explained by EisnerAmper, the record supports a finding that there is related to jurisdiction, because the plaintiffs' petition/claims in this case have a conceivable effect on the bankruptcy.[37] The conceivable effect is obviously the result of the fact that the primary purpose of both this case and the bankruptcy is to recover

---

[36] Petition, ¶ 189.

[37] Record document number 11, EisnerAmper LLP and EisnerAmper (Cayman) Ltd.'s Opposition to Plaintiffs' Motion to Remand, pp. 18-24.

the plaintiffs' $100 million investment loss in the Leveraged Series N Shares.  Plaintiffs do not dispute this connection. This connection and relationship is not simply a tangential one based on the shared facts underlying this case and the bankruptcy proceedings.  If the outcome in this litigation is that the plaintiffs succeed in fully or partially recovering their $100 million investment loss from EisnerAmper, this recovery would reduce the amount of the plaintiffs' claims against the debtor and thereby potentially benefit other creditors.[38]  This conceivable effect is sufficient to establish related to jurisdiction under § 1334(b).[39]

Plaintiffs also argued that the Confirmation Order signed by the Fletcher International bankruptcy judge on March 28, 2014, the day after removal, provides further evidence that related to jurisdiction is lacking.[40]  Plaintiffs relied on the fact that

---

[38] As explained in CV 13-373-SDD-SCR, Robin Lee McMahon, one of the liquidators of the Leveraged and Arbitrage winding-up proceedings, concluded that plaintiff Louisiana pension funds were the largest stakeholders and most significant, aggrieved parties with respect to the debtor Fletcher International.  Civil Action Number 13-373-SDD-SCR, record document number 204, pp. 10-11.

[39] *See, In re Canion*, 196 F.3d at 586-87 (claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer related to jurisdiction).

[40] Record document number 10-5, Exhibit 3.  Plaintiffs settled the proofs of claim they filed in the bankruptcy case for $3 million.  Plan, Article VI, p. 14.

paragraphs 43 and 44 of the Confirmation Order and Section 10.6 of the Plan allow the plaintiffs to assert any and all claims and defenses they have against any person or entity, other than Fletcher International/Debtor, the Estate or Trustee, in any federal or state court. According to the plaintiffs, this shows that the bankruptcy court has given them specific authority to pursue their claims in state court, and is further evidence that this case is unrelated to the bankruptcy.

This argument is unsupported and not persuasive. If there is related to jurisdiction at the time of removal, provisions of the Confirmation Order and Plan which was entered after removal cannot divest the court of bankruptcy jurisdiction.[41] Therefore, even if the provisions of the Plan relied on by the plaintiffs are considered under the applicable law they would not support finding that the court does not have subject matter jurisdiction over this case under § 1334(b). Furthermore, post-confirmation, the claims brought by the plaintiffs in this case against EisnerAmper could continue to have an affect the administration of the Plan. The foundation of the Plan is an Investor Settlement in which Fletcher International/Debtor, Leveraged, Arbitrage and their Liquidators and Massachusetts Bay Transportation Authority Retirement Fund agreed to pool their claims against third parties for breach of contract, fraud, breach of fiduciary duty, negligence and similar

---

[41] *In re Enron Corp. Securities*, 535 F.3d at 336.

torts.[42]  One of the parties included in the list of pooled claims in Exhibit A to the Plan is EisnerAmper, along with any of its parents, subsidiaries and affiliates.  These are essentially the same claims the plaintiffs have alleged here in their petition filed in state court against EisnerAmper on February 28, 2014.

It is uncontested that under the Plan the plaintiffs had the right to bring their claims against EisnerAmper in state court. But it does not follow that this litigation is now unrelated to the bankruptcy proceedings.  If the plaintiffs prevail on some or all of the claims they have brought against EisnerAmper, this could affect decisions about what pooled claims the Plan Administrator will pursue, which will in turn affect the amount of fees and expenses incurred in carrying out the Plan, and the amount to be distributed under the Plan.[43]

In summary, the defendants have demonstrated that the outcome of this proceeding could conceivably have an effect the liabilities of the debtor and the administration of the bankruptcy estate. Under *In re Enron*, at the time of removal this court had jurisdiction under § 1334(b), therefore, the subsequent

---

[42] The Findings of Fact, Conclusions of Law and Order Confirming the Trustee's Second Amended Plan of Liquidation states that the Investor Settlement pooled claim provisions present the best prospect for recovery in the bankruptcy case.  Record document number 10-5, Exhibit 3, Confirmation Order, ¶ 33.

[43] See, for example, record document number 10-5, Exhibit 3, Confirmation Order, ¶¶ 32-35, 53, 99, 103, 109.

Confirmation Order and Plan did not deprive the court of subject matter jurisdiction. Therefore, the defendants have met their burden of establishing that subject matter jurisdiction exists based on 28 U.S.C. § 1334(b).

**Mandatory Abstention**

The court must now turn to address whether mandatory or permissive abstention is appropriate in the circumstances of this case. A party seeking mandatory abstention under § 1334(c)(2) bears the burden of establishing the following: (1) the claim has no independent basis for federal jurisdiction other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11, but does not arise under or in a case under title 11; (3) an action has been commenced in state court; and, (4) the action could be adjudicated timely in state court. *In re TXNB Internal Case*, *supra; In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 846-847 (S.D.Tex. 2006).

The analysis above demonstrates that this case has an independent basis for federal jurisdiction - diversity. Because this action could have been commenced in federal court on the basis of diversity jurisdiction, mandatory abstention under § 1334(c)(2) is not appropriate. *Id.; Briese v. Conoco-Phillips Co.*, 2009 WL 256591 (W.D.La. Feb. 3, 2009). Mandatory abstention applies only when there is no basis for federal jurisdiction other than § 1334. *In re Brooks Mays Music Co., supra.* Plaintiffs' inability to

establish this first requirement for mandatory abstention under §
1334(c)(2), makes it unnecessary to address the other three
factors.

**Permissive Abstention**

The final issue is whether the court should exercise its
discretion to abstain and remand under § 1334(c)(1) and § 1452(b).
In its substituted opinion in *Firefighters' Retirement System v.
Citco Group Ltd.* on August 6, 2015, the appellate court held that
"the district court cannot permissively abstain from exercising
jurisdiction in a proceeding related to Chapter 15 cases." Under
28 U.S.C. § 1334(c)(1) the district court is prohibited from
permissively abstaining and equitably remanding such an action to
state court.

Based on the reasons explained in the section of this report
addressing the existence of related to Chapter 11 bankruptcy
jurisdiction, the Fifth Circuit's decision in *Firefighters'
Retirement System v. Citco Group Ltd.*,[44] and the provisions of the
Confirmation Order and Plan in the Chapter 11 case, it is apparent
that this case is related to the Chapter 15 bankruptcy proceedings
of the Leveraged Fund and the Arbitrage Fund. Therefore, the
decision in *Firefighters' Retirement System v. Citco Group Ltd.* is
binding and controls the resolution of the permissive abstention

---

[44] 2015 WL 4666010 *5, n 7.

issue in this case.  The court has no discretion to abstain and equitably remand this action to state court.

**Costs and Expenses under 28 U.S.C. § 1447**

Plaintiffs moved for an award of attorney's fees and costs under 28 U.S.C. § 1447(c).  Plaintiffs have not established that the court lacks subject matter jurisdiction based on the diversity statute, or § 1334(b).  Therefore, there is no basis under § 1447(c) to award the plaintiffs any fees or expenses incurred as a result of the removal.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that the Motion to Remand filed by the plaintiffs be denied.

Baton Rouge, Louisiana, August 18, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE