UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

CIVIL ACTION

VERSUS

NO. 14-182-SDD-EWD

EISNERAMPER, LLP, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 21, 2017.

_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIREFIGHTERS' RETIREMENT
SYSTEM, ET AL.

CIVIL ACTION

VERSUS

NO. 14-182-SDD-EWD

EISNERAMPER, LLP, ET AL.

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss Plaintiffs' Petition (the "Motion to Dismiss")[1] filed by EisnerAmper LLP ("Eisner US") and EisnerAmper (Cayman) Ltd ("Eisner Cayman") (collectively, "Defendants" or "Eisner"). The Motion is opposed,[2] and Defendants have filed a Reply.[3] For the reasons set forth herein, it is the recommendation of the undersigned that the Motion to Dismiss be **GRANTED**.

**I.     BACKGROUND**

This case arises out of the same facts and circumstances presented in *Firefighters' Retirement System, et al. v. Citco Group Limited, et al.*, No. 13-373-SDD-EWD (the "Original Action"). Plaintiffs filed the Original Action on March 1, 2013.[4] In the Original Action, Plaintiffs filed suit in Louisiana state court against 23 defendants asserting claims under the Louisiana Securities Act and Louisiana Unfair Trade Practices Act, as well as third party beneficiary, unjust enrichment, breach of contract, negligent misrepresentation, and general tort claims.[5] The Original

---

[1] R. Doc. 19.

[2] R. Doc. 43.

[3] R. Doc. 48. In addition to their Reply, Defendants also filed a Notice of Recent Authority Regarding the Motion to Dismiss Plaintiffs' Petition. R. Doc. 65.

[4] Original Action, R. Docs. 1-3.

[5] Original Action, R. Doc. 1-3. Plaintiffs' Petition for Damages was filed on March 1, 2008. Therein, Plaintiffs named the following defendants: (1) Citco Group Limited; (2) Citco Fund Services (Cayman Islands), Limited; (3) Citco

2

Action was removed pursuant to 28 U.S.C. § 1452(a), and jurisdiction is maintained in this Court pursuant to 28 U.S.C. § 1334(b).[6]

Plaintiffs' claims arise from a $100 million investment loss. In April of 2008, the Louisiana Funds purchased 100,000 Series N Shares offered and issued by FIA Leveraged Fund ("Leveraged") for $100 million.[7] After a series of investment transactions initiated by Leveraged, in March of 2011, Plaintiffs sought to redeem their Series N shares.[8] Ultimately, the shares went unredeemed and the Plaintiffs determined that the investment was illiquid and, thus, the N shares, for which there was no market, were valueless.[9]

On February 28, 2014, Plaintiffs filed the instant suit against Eisner US and Eisner Cayman.[10] The suit was removed to this court on March 27, 2014, and, like the Original Action, jurisdiction is maintained pursuant to 28 U.S.C. § 1334(b).[11]

---

Fund Services (Suisse) S.A.; (4) Citco Banking Corporation, N.V.; (5) Citco N.V.; (6) Citco Fund Services (Europe) BV; (7) Citco (Canada), Inc.; (8) Citco Technology Management, Inc.; (9) Citco USA; (10) Citco Bank Nederland, N.V., Dublin Branch; (11) Citco Global Custody N.V.; (12) Citco Fund Services (Bermuda) Limited (collectively, the "Citco Defendants"); (13) Fletcher Asset Management, Inc.; (14) Alphonse "Buddy" Fletcher, Jr.; (15) Denis Kiely; (16) Duhallow Financial Services, LLC; (17) Lisa Alexander; (18) Peter M. Zayfert (collectively, the "Fletcher Defendants"); (19) Consulting Services Group, LLC ("CSG"); (20) Joe Meals (collectively, the "Investment Advisor Defendants"); (21) Grant Thornton International, Ltd.; and (22) Non-Series N Shareholders. Original Action, R. Doc. 1-3. On May 8, 2013, Plaintiffs filed a Second Amendment to the Petition for Damages adding the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP as a defendant. Original Action, R. Doc. 1-3.

[6] "[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In the Original Action, the Fifth Circuit has noted that "removal was proper based on the Chapter 11 proceedings, such that the district court had subject matter jurisdiction at the time of removal." Original Action, R. Doc. 222. In the Original Action, defendants have explained that Arbitrage was an intermediate-level fund in the master/feeder structure of the Fletcher-run funds. Original Action, R. Doc. 113. Assets of Arbitrage were invested in another intermediate-level fund, Fletcher International, Inc. ("International") which in turn invested its assets in the ultimate master fund, Fletcher International Ltd. Original Action, R. Doc. 113. On June 29, 2012, Fletcher International Ltd. filed a voluntary petition under 11 U.S.C. §§ 101 *et seq.* in the Bankruptcy Court for the Southern District of New York.

[7] R. Doc. 1-2, ¶ 4

[8] Original Action, R. Doc. 1-3, ¶ 41.

[9] *See*, Original Action, R. Doc. 1-3, ¶¶ 34-45 & 18.

[10] R. Doc. 1-2.

[11] R. Doc. 1. *See*, R. Docs. 12 & 14.

Plaintiffs allege that another auditor, Grant Thornton,[12] prepared initial audits for Leveraged and Leveraged's master fund, Arbitrage, for the years ending December 31, 2007 and December 31, 2008.[13] Following the resignation of Grant Thornton on March 25, 2010, Plaintiffs allege that Eisner was engaged to perform the audit for Leveraged for the year ending December 31, 2009.[14] Plaintiffs allege that Eisner "issued opinions for Arbitrage's financial statements for the year-ended December 31, 2009, but Eisner never issued the 2009 Leveraged Audit."[15] Plaintiffs allege that the 2009 Leveraged Audit was never completed because Eisner "became aware of facts showing that the Redemption Right[16] had been triggered, which would have allowed an automatic redemption by Plaintiffs and created a run on the other funds" also audited by Eisner.[17] Plaintiffs allege that Eisner failed to "issue any timely opinions on Leveraged or adequately describe numerous significant, material events and transactions" affecting the value of

---

[12] Plaintiffs brought a separate lawsuit against Grant Thornton LLP, which was also removed to this court. *Firefighters' Retirement System et al. v. Grant Thornton LLP, et al.*, No. 14-103-SDD-EWD. Additionally, as noted above, Plaintiffs asserted claims against Grant Thornton International, Ltd. in the Original Action.

[13] R. Doc. 1-2, ¶ 20. In their Petition, Plaintiffs allege that "Leveraged is the feeder fund in a 'master/feeder' structure. The Offering Documents stated the master fund in the structure is Fletcher Income Arbitrage Fund, Ltd…." R. Doc. 1-2, ¶ 8. Plaintiffs allege that "Leveraged and Arbitrage were managed by Fletcher Asset Management, Inc. ['FAM'] whose president and owner is Alphonse 'Buddy' Fletcher, Jr. ['Fletcher']." R. Doc. 1-2, ¶ 11.

[14] R. Doc. 1-2, ¶¶ 5 & 21.

[15] R. Doc. 1-2, ¶ 21.

[16] Plaintiffs allege that as a condition of their purchase of the Series N shares, they were "given the Redemption Right whereby Plaintiffs' Series N Shares would be redeemed prior to any other shareholder upon the occurrence of two events: (i) if the Series 4, 5, or 6 investors redeemed, a mandatory redemption of Series N shares was required one day before the redemption of the Series 4, 5, or 6 shares; and (ii) an automatic redemption of Series N would occur if the value of the Non-Series N shareholders' capital accounts fell below 20% of the value of Series N shareholders' capital accounts." R. Doc. 1-2, ¶ 4.

[17] R. Doc. 1-2, ¶ 5.

4

Leveraged and Plaintiffs' redemption rights[18] due to conflicts of interest and a loss of independence.[19]

Plaintiffs further allege that during a July 22, 2011 meeting in New York between Eisner, Fletcher, and Plaintiffs (the "New York Meeting"), Eisner and Fletcher induced Plaintiffs to execute a Waiver of their Redemption Right.[20] Plaintiffs assert that "Plaintiffs were advised that no audit report would be forthcoming unless they executed a waiver of the Redemption Right…" and that even after the Waiver was executed, the 2009 Leveraged Audit was never issued.[21] Plaintiffs allege that although Eisner and Fletcher disclosed certain issues regarding valuation of the IAP/EIC Note during the New York Meeting, they failed to disclose the depletion of Leveraged's net worth caused by other events and transactions and in so doing, "perpetuated Fletcher's fraud."[22] Plaintiffs allege that Eisner and Fletcher solicited the Waiver based on "the

---

[18] R. Doc. 1-2, ¶ 24. In particular, Plaintiffs allege that Eisner failed to disclose payments made to a Non-Series N shareholder of Leveraged, Corsair, in exchange for redemption of its Non-Series N shares (the "Corsair Redemption") in violation of Plaintiffs' Redemption Rights. R. Doc. 1-2, ¶¶ 25-37. Plaintiffs also allege that although the Offering Documents obligated Leveraged to invest 100% of its funds into Arbitrage, "the bulk of the money the Plaintiffs invested was used to fund a variety of transactions with Citco or its affiliates, and for fees paid to FAM, Fletcher, or professionals, administrators, and consultants beholden to Fletcher. The remainder was used for redemptions and margin calls." (the "Misuse of Offering Proceeds") R. Doc. 1-2, ¶¶ 38-45. Additionally, Plaintiffs allege that during its audit of Leveraged, Eisner concluded that an unsecured promissory note (the "IAP/EIC Note") "was worth only $10 million, a value that would have triggered the mandatory redemption of Leveraged's Series N Shares, and the likely collapse of the entire Fletcher structure." R. Doc. 1-2, ¶ 57. Plaintiffs allege that "Eisner did not timely issue the 2009 Leveraged Audit because it knew that the IAP/EIC Note should be valued at $10 million and would give the Plaintiffs the facts necessary to exercise their Redemption Right." R. Doc. 1-2, ¶ 60.

[19] Plaintiffs allege that Eisner failed to timely opine and appropriately identify related party transactions including the funding of the IAP/EIC Note, Corsair Redemption, payment of fees to FAM, and Misuse of Offering Proceeds (collectively, the "Related Parties Transactions") and that "[a] conflict of interest developed in Eisner's audit of Fletcher, and Fletcher's other multiple entities audited by Eisner, because Eisner became concerned that a default by Leveraged would cause a run on all of the other funds." R. Doc. 1-2 ¶¶ 46-50 & 76.

[20] R. Doc. 1-2, ¶¶ 68-74.

[21] R. Doc. 1-2, ¶ 6.

[22] R. Doc. 1-2, ¶ 73. Plaintiffs specifically allege that:

> The New York Meeting was the first time that Eisner disclosed to Plaintiffs the issues relating to the valuation of the IAP/EIC Note. At that meeting, the Plaintiffs were told that their failure to consent would put at risk their previously accrued 1% a month return and prevent the Leveraged audit from being issued. It was never disclosed to Plaintiffs that the assets of Leveraged were substantially impaired, and that a loss of substantially all of their investment was likely because

impact the exercise of the Redemption Right would have on Arbitrage and other Fletcher entities" and that the New York Meeting "was another step in the cover-up of the Fletcher scheme…."[23]

## II.   LAW AND ANALYSIS

### A. Personal Jurisdiction

Fed. R. Civ. P. 12(b)(2) authorizes dismissal of a complaint where the court lacks personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Laplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When, as in this case, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Id*. ("Proof by preponderance of the evidence is not required."). However, in assessing whether the plaintiff has presented a *prima facie* case of

---

of the diminishment of rights and asset values created by the Corsair Default, Corsair Redemption, Misuse of the Offering Proceeds, [and] the Related Parties Transactions. It was never disclosed to Plaintiffs that the IAP/EIC Note had been used to make a personal loan to Fletcher, and had little or no security.

[23] R. Doc. 1-2, ¶¶ 64 & 69. *See also*, R. Doc. 1-2, ¶ 95 ("What has become apparent is that the Waiver was obtained solely to protect Eisner on the previous audits issued for Arbitrage and other Fletcher entities, and to prevent Eisner from having to restate those audits or withdraw those audits because of its knowledge of the Redemption Right issues that would [have] impacted those audits."). *See also*, R. Doc. 1-2, ¶ 85 ("By participating in the New York Meeting with awareness of the exercise of the Redemption Right would have on the other Fletcher entities, Eisner became an advocate, not an auditor, and compromised its independence, violating the integrity and objectivity required of an auditor.").

personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'" *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).  The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

As noted above, this court has "related to" bankruptcy subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b).  "Because the Court has 'related to' bankruptcy jurisdiction pursuant to § 1334(b), the entire body of the Federal Rules of Bankruptcy Procedure…applies to this action." *Lentz v. Trinchard*, 730 F.Supp.2d 567, 577 n. 33 (E.D. La. 2010) (citing *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997) ("We have determined that this case is properly in federal district court on 'related to' jurisdiction under § 1334(b).  The entire body of Bankruptcy Rules, therefore, applies to this action."); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1236-38 (3rd Cir. 1994) (analyzing history and current language of bankruptcy rules and finding that "the Bankruptcy Rules govern non-core, 'related to' proceedings before a district court…."); *Diamond Mortg. Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1243-44 (7th Cir. 1990) (same)).  Therefore, Bankruptcy Rule 7004(d), which provides for nationwide service of process in adversary proceedings arising under Title 11 of the United States Code, also applies.[24]

---

[24] Bankruptcy Rule 7004(d) provides for nationwide service of process.  ("The summons and complaint and all other process except a subpoena may be served anywhere in the United States.").  In turn, Bankruptcy Rule 7004(f) provides:
> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective **to establish personal jurisdiction over the person of any defendant with respect to a case** under the Code or a civil proceeding arising under the Code, or arising in or **related to a case under the Code**.  (emphasis added).

7

Although the Fifth Circuit has not directly analyzed nationwide service of process and personal jurisdiction under Bankruptcy Rule 7004, it has upheld the exercise of personal jurisdiction in the context of nationwide service of process under other federal statutes. In *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994), the court considered personal jurisdiction based on nationwide service of process provisions in the 1934 Securities Exchange Act, 15 U.S.C. § 78aa. There, plaintiff alleged that defendant, a dissolved New York law firm ("Buchman"), misrepresented information and failed to disclose material information included in a tax opinion and confidential offering memorandum drafted by the firm. Buchman filed a motion to dismiss, arguing that it did not have minimum contacts with Texas and therefore the court could not exercise personal jurisdiction. The *Busch* court disagreed, explaining that 15 U.S.C. § 78aa "gives the district court the authority to serve defendants nationwide" and that "'due process requires only that a defendant in a federal suit [involving nationwide service of process] have minimum contacts with the United States.'" *Id*. at 1257. The Fifth Circuit stated that "while the Due Process Clause must be satisfied if a forum is to acquire personal jurisdiction over a defendant, sovereignty defines the scope of the due process test." *Id*. at 1258. "[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Id*. The court concluded that because the relevant sovereign was the United States, "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States." *Id*. Accordingly, under *Busch*, where the relevant sovereign is the United States, the "forum" with which the defendant must have minimum contacts to satisfy due process is expanded to be the United States (rather than a particular state).

8

In *Bellaire General Hospital v. BlueCross BlueShield of Michigan*, 97 F.3d 822 (5th Cir. 1996), the Fifth Circuit had occasion to revisit its "national contacts" analysis of *Busch*. There, the court considered 29 U.S.C. § 1132(e)(2), the ERISA provision which provides for nationwide service of process. Defendant, a corporation operating exclusively within the state of Michigan, argued that it did not have sufficient contacts with the state of Texas to be subject to personal jurisdiction in the Southern District of Texas. The Fifth Circuit found that the district court properly exercised personal jurisdiction over defendant in Texas, explaining that it "placed no limitation on our conclusion in *Busch* regarding personal jurisdiction in cases involving federal statutes providing for nationwide service of process" and therefore the case before it fell "squarely within our *Busch* holding." *Id*. at 825 & 26. While the *Bellaire* court "dutifully appl[ied] *Busch*,"[25] it expressed "misgivings," stating "[w]e view personal jurisdiction and service of process as conceptually distinct issues. We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions." *Id*. at 826.

Notwithstanding the philosophical questions recognized by the Fifth Circuit, *Busch* and *Bellaire* remain binding authority on this court. Under the law of this circuit, the personal jurisdiction inquiry is collapsed into a question of a defendant's contacts with the United States. Thus far, the Fifth Circuit does not require any additional "fairness or reasonableness" test as a matter of constitutional due process.[26] The question thus presented is whether movant has purposeful and meaningful contacts with the United States.

---

[25] The *Bellaire* court noted *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121, n. 8 (5th Cir. 1992) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court."). 97 F.3d 826 n. 3.

[26] Some circuits undertake additional Fifth Amendment due process analysis to determine if the exercise of personal jurisdiction would be "fair and reasonable." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997). The Eleventh Circuit has concluded that "the Due Process Clause of the Fifth Amendment provides an independent constitutional limitation of the court's exercise of personal jurisdiction over a domestic defendant served pursuant to a federal statute's nationwide service of process provision." *Id*. at 939. According to the Eleventh Circuit, "'minimum contacts' with the United States do not…automatically satisfy the due process requirements of

### 1. Eisner US

Eisner US is "a New York limited liability partnership with its principal place of business in New York."[27] Per the Declaration of Peter W. Testaverde, Jr., a partner in the New York office of Eisner US, Eisner US "entered into an engagement letter dated March 24, 2010…with Fletcher Asset Management, Inc. ("FAM") to perform financial statement audits as of December 31, 2009 and for the year then ended for Fletcher International, Ltd., and certain of its subsidiaries and affiliates, including FIA Leveraged Fund."[28]  Additionally, the July 22, 2011 letter agreement/Waiver (the "July 2011 Letter") attached to Plaintiffs' Petition was signed by Eisner US and shows a New York return address.[29]  It is undisputed that Eisner US has contacts with the United States.

As previously explained by this court, "where a federal statute authorizes nationwide service of process, the relevant sovereign or forum is not the particular State where the action is filed but, rather, the forum to which the minimum contacts analysis is applied, which is the United States." *Firefighters' Retirement System v. Citco Group Limited*, 2016 WL 5799298, at * 5 (M.D. La. Sept. 30, 2016).  Eisner US resides in and, undisputedly, has minimum contacts with the United States.  "As [Eisner US] is a resident of the United States and, therefore, necessarily has minimum contacts with the United States, the Court finds that the due process concerns of the Fifth

---

the Fifth Amendment." *Id*. at 947.  As the court explained, "[t]here are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Id*.

[27] R. Doc. 1, ¶ 10.  Eisner US was served pursuant to Louisiana's Long Arm Statute.  R. Docs. 1-2 & 1-3.  The Bankruptcy Rules provide for nationwide service of process.  Bankruptcy Rule 7004(b) provides for service of process by virtually the same manner and means as service on a non-Louisiana resident under Louisiana's Long Arm Statute.

[28] R. Doc. 19-5, ¶ 2.

[29] R. Doc. 1-2, Exhibit A.

Amendment are satisfied." *Id*. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss Eisner US for lack of personal jurisdiction be DENIED.

### 2. Eisner Cayman[30]

#### i. General Jurisdiction

In its Notice of Removal, Eisner Cayman asserts it is "a corporation organized and existing under the laws of the Cayman Islands with its principal place of business in Grand Cayman, Cayman Islands."[31] Declarations[32] submitted in support of Defendants' Motion to Dismiss do not address the entity's contact with the United States. Rather, the Declarations attest to the absence of contact with the State of Louisiana.[33]

The proper consideration when determining general jurisdiction is whether a defendant's contacts with the forum are "'so continuous and systematic'" as to render the defendant "'essentially at home'" in the forum. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746, 762 (2014)). "The Fifth Circuit has very recently observed that it would be an 'exceptional case' for the court to exercise general personal jurisdiction over a corporation that is incorporated, and has its principal place of business, in a foreign country." *Firefighters' Retirement System v. Citco Group Limited*, 2016 WL 5799298,

---

[30] As discussed herein, the undersigned recommends dismissal of Eisner Cayman for lack of general or specific in personam jurisdiction. In addition to the analysis set forth below, the undersigned notes that the record does not include any indication that Eisner Cayman was formally served. "Proper service is critical because '[i]t is axiomatic that in order for there to be in personam jurisdiction there must be valid service of process.'" *Smith v. Womans Hospital*, 2015 WL 2357127, at * 2 (M.D. La. May 15, 2015) (quoting *Attwell v. LaSalle Nat. Bank*, 607 F.2d 1157, 1159 (5th Cir.1979)).

[31] R. Doc. 1, ¶ 11.

[32] R. Docs. 19-4 (Declaration of Jeffrey Melnick) & 19-5 (Declaration of Peter W. Testaverde, Jr.).

[33] R. Doc. 19-4, ¶ 10 ("EisnerAmper Cayman is not registered to do business in Louisiana, maintains no office, telephone listing, mailing address or bank account in Louisiana, has no employees in Louisiana, and does not rent, use or own any property in Louisiana.").

at * 5 (M.D. La. Sept. 30, 2016) (citing *Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 235 (5th Cir. 2016)).

The Petition fails to plead sufficient facts which would support this court's exercise of general personal jurisdiction over Eisner Cayman because the Petition does not allege activity so "continuous and systematic" as to render Eisner Cayman "essentially at home" in the United States. *See*, *Monkton*, 768 F.3d at 432. Accordingly, the undersigned finds that this court lacks general personal jurisdiction over Eisner Cayman.

### ii. Specific Jurisdiction

The court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, (1984)). "[T]o exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum," in other words, the nonresident defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The Fifth Circuit employs a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum [here, the United States] *i.e.*, whether it purposely directed its activities toward the forum or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton*, 768 F.3d at 433 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). If the plaintiff can establish the first two prongs, the burden shifts

to the defendant to show that exercising jurisdiction would be unfair or unreasonable. *Id*. For the reasons that follow, the undersigned finds that Plaintiffs have failed to establish that Eisner Cayman has minimum contacts with the forum.

First, Plaintiffs do not allege that Eisner Cayman had any contacts with the relevant forum. While Defendants' own Declarations support an inference that both Eisner US and Eisner Cayman were involved in the 2009 Leveraged Audit, Plaintiffs have not alleged that Eisner Cayman's work on the 2009 Leveraged Audit involved any forum-related contacts. In his Declaration, Mr. Testaverde asserts that Eisner US "entered into an engagement letter dated March 24, 2010…to perform financial statement audits as of December 31, 2009 and for the year then ended for Fletcher International, Ltd., and certain of its subsidiaries and affiliates, including FIA Leveraged Fund."[34] Mr. Testaverde further asserts that "[t]hrough this engagement letter, EisenerAmper (Cayman) Ltd….was also retained with respect to certain Fletcher entities *incorporated in the Cayman Islands*, such as Leveraged."[35] This court has previously explained that providing services to funds incorporated under the laws of the Cayman Islands does not, in itself, constitute contact with the United States. *Firefighters' Retirement System v. Citco Group Limited*, 2016 WL 5799298, at * 8 (M.D. La. Sept. 30, 2016) ("The Leveraged and Arbitrage funds are both incorporated under the laws of the Cayman Islands. Arguably, the services that Citco Banking provided for the Leveraged and Arbitrage funds does not constitute contact with the United States."). Moreover, the only possible forum contacts indicated by the record before the court stem from the July 2011 Letter attached to Plaintiffs' Petition. That Letter provides that Eisner "received the Fund's [presumably, the Fletcher Fund's] authorization to allow representatives of

---

[34] R. Doc. 19-5, ¶ 2.

[35] R. Doc. 19-5, ¶ 2 (emphasis added). *See also*, R. Doc. 19-4, ¶ 8 ("EisnerAmper Cayman provides professional services for EisnerAmper clients which are themselves Cayman entities or have Cayman affiliates.").

13

the Louisiana Funds to speak with EisnerAmper LLP (which for purposes of this letter includes EisnerAmper (Cayman) Ltd.) partner Peter Testaverde concerning audit services provided by EisnerAmper LLP's [sic] to the Fletcher Fund."[36] Per his Declaration, Mr. Testaverde is a "partner with the New York office of EisnerAmper LLP…where I have worked since 2008."[37] Accordingly, while the July 2011 Letter indicates that Mr. Testaverde (a partner with Eisner US) was authorized to speak with Plaintiffs at the New York Meeting regarding the services provided by both Eisner US and Eisner Cayman, there is no allegation that such authorization constitutes contact by Eisner Cayman with the relevant forum and, given Mr. Testaverde's participation in the meeting, there is no suggestion that any partner or other representative of Eisner Cayman participated in the New York Meeting.

Second, to the extent Plaintiffs seek to impute Eisner US's forum contacts to Eisner Cayman, Plaintiffs have not alleged any basis for overcoming the presumption of institutional independence between the two entities. Based on its corporate disclosure statement, Eisner Cayman "is a division of EisnerAmper LLP."[38] Per the Declaration of Jeffrey Melnick, the Chief Financial Officer for Eisner US, Eisner US is "the indirect parent of EisnerAmper Cayman."[39] "[C]ourts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). *See also*, *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) ("so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence

---

[36] R. Doc. 1-2, Exhibit A.

[37] R. Doc. 19-5, ¶ 1.

[38] R. Doc. 3.

[39] R. Doc. 19-4, ¶ 8.

of one in a forum may not be attributed to the other….Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship.") (internal citations omitted); *Gines v. D.R. Horton, Inc.*, 867 F.Supp.2d 824, 831 (M.D. La. 2012) ("The mere fact that a parent corporation wholly owns a subsidiary and shares common management personnel with the subsidiary does not in itself defeat their presumably separate corporate identities for purposes of jurisdiction.").

Here, Plaintiffs have not alleged any forum specific contacts by Eisner Cayman, and they have failed to point to any facts that rebut the presumption of institutional independence between Eisner US and Eisner Cayman.[40] Accordingly, the undersigned recommends that Eisner Cayman's Motion to Dismiss for lack of personal jurisdiction be GRANTED and that Plaintiffs' claims in this matter against Eisner Cayman be DISMISSED.

### B. Venue

Defendants argue that "venue in the Middle District of Louisiana is improper under 28 U.S.C. § 1391(b)."[41] The general venue statute, 28 U.S.C. § 1391, applies to actions "brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). That statute "has no application" to removed actions. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953). *See also*, *Collin County v. Siemens Business Services, Inc.*, 250 Fed. Appx. 45, 51 (5th Cir. 2007) ("However, '[s]ection 1441(a), and not the ordinary federal venue statute, 28 U.S.C. § 1391, governs venue in

---

[40] Although Plaintiffs have not requested jurisdictional discovery in this matter, the undersigned notes that where, as here, Plaintiffs "fail to make 'a preliminary showing of jurisdiction' a request for jurisdictional discovery is properly denied." *Firefighters' Retirement System v. Citco Group Limited*, 2016 WL 5799298, at * 13 (M.D. La. Sept. 30, 2016).

[41] R. Doc. 21-1, p. 10.

removed cases.'") (quoting *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004)); *Ron Williams Construction, Inc. v. Lide Industries, LLC*, 2011 WL 6817889, at * 1 (W.D. La. Dec. 27, 2011) (same); 14C Fed. Prac. & Proc. Juris. § 3732 (4th ed.) ("The general removal statute, Section 1441 of Title 28, provides that the venue of a removed case is 'the district and division embracing the place where such action is pending.' Accordingly, the general venue statutes, Section 1391 through Section 1393, do not apply to cases that have been initiated in a state court and removed to a federal court. It therefore is immaterial that the federal court to which the action is removed would not have been a proper venue if the action originally had been brought there.").

As explained by the Supreme Court, "[t]he venue of removed actions is governed by [28 U.S.C. § 1441(a)]. That section expressly provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a). Defendants removed this suit from the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana.[42] Because East Baton Rouge Parish is located within the Middle District of Louisiana, this court is a proper venue for this action. *See*, *Ron Williams Construction, Inc. v. Lide Industries, LLC*, 2011 WL 6817889, at * 1 (W.D. La. Dec. 27, 2011) ("venue for removed actions is governed by 28 U.S.C. § 1441(a), which provides that venue is proper in the district in which the state court action was pending prior to removal. [Defendant] removed this action from the 14th Judicial District Court for Calcasieu Parish, Louisiana. Because Calcasieu Parish is located within the Western District

---

[42] R. Doc. 1.

of Louisiana, this court is a proper venue for this action."). Accordingly, the undersigned recommends that Defendants' Motion to Dismiss for improper venue be DENIED.

## C. Timeliness of Plaintiffs' Claims

Defendants assert that Plaintiffs' claims should be dismissed as untimely because: (1) the peremptive period set forth by La. R.S. § 9:5604(A) for bringing such claims has expired; and (2) Plaintiffs failed to comply with the procedure for submitting claims against accountants to the public accountant review panel and the time to do so has expired.[43] Because the undersigned recommends that Plaintiffs' claims against Eisner US[44] should be dismissed as premature for failure to submit same to the accountant review panel, the undersigned does not reach Defendants' arguments regarding the timeliness of Plaintiffs' claims under La. R.S. § 9:5604(A).

Defendants argue that Plaintiffs were required to submit their claims to an accountant review panel. La. R.S. § 37:102 provides in pertinent part:

> A. All claims against certified public accountants or firms, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a public accountant review panel established pursuant to R.S. 37:109.
>
> B. Review of a claim by a public accountant review panel shall not take place unless, within the time limitations provided for in R.S. 9:5604, a claimant files with the society a written request for review of the claim and pays to the society a one hundred dollar filing fee to defray the society's administrative costs incurred in performing the duties imposed on it by this Part. The request for review shall set forth the name, surname, and domicile of all claimants and all defendants, shall contain a short, clear, and concise statement of the material facts that give rise to or constitute the claim, and shall

---

[43] R. Doc. 21-1, p. 10.

[44] In opposition to Defendants' Motion to Dismiss, Plaintiffs attach a computer-generated print out from the State Board of Certified Public Accountants of Louisiana (the "State Accounting Board") purporting to show registration of EisnerAmper LLP, New York, New York as a certified public accountant firm with the State Accounting Board. R. Doc. 43-1. As the evidence submitted appears only to relate to Eisner US as a licensee, the analysis that follows is only applicable to that entity.

> designate both a mailing and a physical address for receipt of all notifications concerning the claim.

La. R.S. § 37:101(1) defines a "claim" as "any cause of action against a certified public accountant or firm, regardless of the legal basis of the claim, including but not limited to tort, fraud, breach of contract, or any other legal basis, arising out of any engagement to provide professional services…." That section goes on to define a "claimant" as "any person having an interest or right to assert a claim, whether for himself or on behalf of another." La. R.S. § 37:101(2).

"[T]he plain text of the Louisiana Accountancy Act covers any claims arising from any engagement to provide accounting services…." *Bickerstaff v. Bickerstaff*, 2016 WL 7450469, at * 4 (E.D. La. Dec. 28, 2016). "In fact, case law supports finding the scope as broad as the text implies, without limitations as to malpractice or accountant-client relationship." *Id*. at * 3 (collecting cases). *See also*, *Sigma Delta, LLC v. George*, 2008 WL 1744801, at * 1 (E.D. La. April 11, 2008) ("The term 'any engagement' supports Theriot's position that the review panel requirement applies even when the engagement was not with the party who eventually files suit. Omega's contention to the contrary is not consistent with [the] breadth of the statutes that comprise [the Louisiana Accountancy Act]."). Here, because Plaintiffs' assert claims arising out of Eisner's retention to conduct the 2009 Leveraged Audit, the undersigned finds that such claims against Eisner US are within the scope of La. R.S. § 37:102(A). Moreover, contrary to Plaintiffs' argument that "Eisner's Louisiana license expired in 2013, thus it is not a CPA firm in Louisiana,"[45] the computer-generated print-out Plaintiffs have attached to their opposition indicates that Eisner US's Louisiana license expired on December 31, 2014.[46] Accordingly, on February 28, 2014, the date this suit was filed, Eisner US apparently *was* a Louisiana licensed accountant firm. Accordingly,

---

[45] R. Doc. 43, p. 13.

[46] R. Doc. 43-1.

18

the undersigned finds Plaintiffs' assertion that La. R.S. § 37:102 is inapplicable based on the expiration of the Louisiana license "in 2013" to be unpersuasive.

Pursuant to La. R.S. § 37:105(A), "no action against a certified public accountant or firm or his insurer may be commenced in any court before the claimant's request for review has been presented to a public accountant review panel established pursuant to this Part and the panel has issued a written opinion."[47]  Because the undersigned finds that Plaintiff's claims against Eisner US are within the scope of La. R.S. § 37:102(A), the undersigned finds that Plaintiff's claims against Eisner US must be dismissed as premature.  *See*, *Bickerstaff v. Bickerstaff*, 2016 WL 7450469, at * 4 (E.D. La. Dec. 28, 2016) ("Because the Court finds that plaintiff's claims are covered by [La. R.S. §§ 37:102 & 37:105], the Court dismisses plaintiff's claims against the Pailet defendants as premature."); *Sigma Delta, LLC v. George*, 2008 WL 1744801, at * 1 (E.D. La. April 11, 2008) ("In sum, the Court finds that the review panel requirements of the Louisiana Accountancy Act apply under these facts.  The claims against Theriot are therefore premature."); *In re Easterly Constr. Co., Inc.*, 408 BR 627, 631 (M.D. La. 2009) (granting motion to dismiss for failure to state a claim because "all the claims of the amended complaint against Purpera necessarily arose out of the debtor's engagement of him as its certified public accountant. Accordingly, La. R.S. 37:105 required Easterly to take its claims to an accountant review panel for review before suing Purpera.").[48]  Accordingly, the undersigned recommends that Defendants'

---

[47] Although the statute provides that "[c]ompliance with the requirements of this Part is not to be deemed optional," the Part also provides that the use of the public accountant review panel may be waived "[b]y written agreement of both parties."  La. R.S. §§ 37:105(A) & 107.  Plaintiffs do not allege that the requirements were waived.

[48] Defendants further argue that "it is too late for Plaintiffs to cure this deficiency, as more than one year has passed from the date Plaintiffs' claims accrued, even measuring from the November 25, 2013 date Plaintiffs implausibly claim to have learned of the alleged misconduct."  R. Doc. 21-1, p. 13.  The undersigned makes no determination here regarding whether Plaintiffs may now submit their claims to an accountancy review panel.

Motion to Dismiss for failure to request formation of an accountant review panel be GRANTED and that Plaintiffs' claims against Eisner US in this matter be DISMISSED.

### D. Defendants' Additional Arguments

Because the undersigned recommends dismissing Plaintiffs' claims against Eisner Cayman for lack of personal jurisdiction, and dismissing Plaintiffs' claims against Eisner US as premature for failure to submit same to the accountancy review panel, the undersigned does not reach Defendants' additional arguments regarding standing or failure to state a claim under Rule 12(b)(6).

### III. CONCLUSION

For the reasons set forth herein, it is the recommendation of the undersigned that the Motion to Dismiss[49] be **GRANTED** dismissing all claims in this matter.

Signed in Baton Rouge, Louisiana, on February 21, 2017

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[49] R. Doc. 19.